(No. 19129.—

THE PEOPLE *ex rel.* John S. Rusch, Defendant in Error, *vs.* TINA WORTMAN *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1928—Rehearing denied April 18, 1929.*

LOUIS GREENBERG, and A. PAUL HOLLEB, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, and ROY D. JOHNSON, (CHARLES CENTER CASE, and GROVER C. NIEMEYER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Tina Wortman and Leona Coine, two women who served as judge and clerk, respectively, in the twelfth precinct of the twentieth ward of the city of Chicago in the election held on November 2, 1926, upon petition of John S. Rusch, chief clerk of the board of election commissioners of the city of Chicago, were ruled by the county court of Cook county to show cause why they should not be adjudged guilty of contempt of court for misbehavior in their respective offices at such election. They were adjudged guilty of contempt of court and sentenced to imprisonment in the county jail for one year. The judgments were affirmed by the Appellate Court, and the defendants prosecute error to that court.

The only error assigned is, "the court had no jurisdiction over the subject matter and persons; the law under which the plaintiffs in error were sentenced does not apply to females." The jurisdiction of the county court over the appointment of judges and clerks of election is not questioned but it is contended that it does not extend to the appointment of women. No objection is made to the regularity of the appointment of the plaintiffs in error to the offices exercised by them aside from the fact that they are women. The jurisdiction of the county court in respect to the appointment of judges and clerks of election is found in section 13 of article 2 of the City Election law. Section 9 of article 2 provides that the board of election commissioners shall select three electors in each precinct for judges of election and two for clerks of election, whose qualifications

are identical except that the judges are required to be house-holders while the clerks are not. These qualifications include citizenship of the United States, right to vote in the ward in which the precinct is located, and residence in the precinct in which the elector is selected to act. Among other qualifications it is required that the electors so selected shall be men of good repute and character who can speak, read and write the English language and shall be skilled in the four fundamental rules of arithmetic. After the selections have been made the board of election commissioners is required by section 13 of article 2 to file a report of the selections in the county court for confirmation and appointment, and the court, after notice and hearing, may confirm or refuse to confirm the nominations as the interests of the public may require. Upon such confirmation the statute provides that a commission shall issue to each judge and clerk, and they shall thereupon become officers of the court and be liable in a proceeding for contempt for any misbehavior in their offices. The ratification of the nineteenth amendment to the constitution of the United States by the requisite number of States was proclaimed by the Secretary of State of the United States on August 26, 1920, and the amendment thereupon became a part of the constitution. In 1928 section 9 of article 2 of the City Election act was amended by the omission of the requirement that the judges and clerks shall be men and by inserting the words "men or women" after "electors," in the requirement that the board of commissioners shall choose three electors as judges of election. (Laws of 1928, p. 16.)

It is conceded that the county court had jurisdiction to confirm the choice by the board of commissioners of the persons selected as judges and clerks of election, to appoint them judges and clerks and to issue commissions to them, and that they thereupon became officers of the court and were liable in a proceeding for contempt for any misbehavior in their offices. However, the plaintiffs in error con-

tend that the law prior to its amendment applied to men, only, and not to women, and therefore the court had no jurisdiction to appoint and commission women or to punish them for misbehavior in office by proceeding against them for contempt. It is immaterial to the decision of this case whether or not the law authorized the appointment of men, only, as judges and clerks of election, excluding women. If the county court was authorized to appoint judges and clerks of election as officers of the court and did appoint the plaintiffs in error such officers, if they accepted the appointment and entered upon the performance of the duties of their offices they became such officers *de facto,* and neither their eligibility to appointment nor the validity of their official acts can be inquired into except in a proceeding brought directly for that purpose. They may have been ineligible for lack of citizenship of the United States, residence in the precinct in which they were selected to act, right to vote in the ward in which the precinct was located, good reputation and character, ability to speak, read and write the English language or skill in the four fundamental rules of arithmetic. Neither one nor all of these disqualifications, however, if they existed, nor the disqualification of sex, if that was a disqualification, affected the validity of their acts as officers *de facto.* The definition of an officer *de facto* in the case of *State* v. *Carroll,* 38 Conn. 449, has been approved by many courts. In that case it is said: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised; * * * third, under color of a known election or appointment void because the officer was not eligible or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public." The law validates the

acts of *de facto* officers as to the public and third persons upon the ground, though not officers *de jure*, they are in fact officers whose acts public policy, requires should be considered valid. *Powers* v. *Commonwealth*, 110 Ky. 286; *Wendt* v. *Berry*, 154 id. 586; *Oliver* v. *Jersey City*, 63 N. J. L. 634.

The courts uniformly hold that the acts of officers *de facto*, so far as they affect third parties or the public, are as valid as those of officers *de jure*. (*Coles County* v. *Allison*, 23 Ill. 437; *People* v. *Bangs*, 24 id. 184; *Howard* v. *Burke*, 248 id. 224; *Hussey* v. *Smith*, 99 U. S. 20.) The acts of officers *de facto* cannot be attacked collaterally as invalid but only in a direct proceeding by the proper authority. (*Coles County* v. *Allison*, *supra; People* v. *Pederson*, 220 Ill. 554; *People* ·v. *Severinghaus*, 313 id. 456.) The sureties upon the bond of a justice of the peace *de facto* are liable for his failure to pay over money collected in his official capacity without reference to the regularity of his election, commission or eligibility. (*Green* v. *Wardwell*, 17 Ill. 278.) The validity of his acts in exercising the powers of the office imposes correlative liabilities to the persons interested in those acts. In *People* v. *Newsome*, 291 Ill. 11, a defendant charged in an indictment with fraud and corruption in the conduct of an election was held not entitled to show that his appointment was illegal because there was no record of the establishment of the polling place for which he was appointed, the court holding him to be a *de facto* officer, liable under the law for his acts as such. The office of judge of election had a legal existence, the election was the general election authorized by law, the voters went to the polls and cast their ballots, the defendant acted throughout the day and at the canvass of the ballots as one of the election officers, and he could not escape responsibility for any delinquency on his part simply because of a mistake of the county board in not making a proper record of the establishment of the election district. In *Peo-*

*ple* v. *McCann,* 247 Ill. 130, the defendant was indicted for bribery as a police inspector of the city of Chicago, and it was objected to the indictment that it did not show that he had been legally appointed to that office. The city council had by ordinance created the office of inspector of police but provided for the filling of the office by appointment by the general superintendent of police, while by statute the power of filling offices established by ordinance was vested in the mayor, with the approval of the city council. It was held that the defendant was not an officer *de jure* but that by his appointment and his assumption and discharge of the duties of the office he became an officer *de facto,* and could not escape liability for his criminal acts in that capacity by showing that he was never legally appointed to the office.

The rule of criminal responsibility for malfeasance in office of an officer *de facto* is announced in many decisions of the courts of other States. It rests upon the same principle as the general doctrine announced in *State* v. *Carroll, supra:* "The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interest of the public and individuals whose interests were involved in the official acts of persons exercising the duties of an office without being lawful officers." The cases which have been cited as to criminal responsibility were cases of prosecution by indictment. They are not distinguishable in reason, however, from this case. The plaintiffs in error were officers of the court *de facto.* The question of their malfeasance in office arises between them and the public. By virtue of their official stations they assisted in the conduct of the election and were guilty of misconduct in office by which the returns of the result of the election in their precinct were falsified. It is conceded that if they were eligible to their offices the judgments against them should be affirmed. It would be a travesty of justice if the plaintiffs in error, who were actually *de facto* officers charged by law

with responsibility for the conduct of the election in this precinct, could exercise all the authority of judge and clerk of the election and receive the compensation fixed by law for their services, and yet, when called upon to answer for their willful misconduct in their offices, could avoid the punishment provided by law for their offenses by the plea that they were not eligible to the offices which they filled. By the same process of reasoning a juror who had been improperly included in the jury, though not residing in the county, might successfully contend, in answer to a charge of contempt for misconduct as a juror, that the court was without power to punish him for contempt since he was not legally a juror because not eligible under the statute. In *Diggs* v. *State,* 49 Ala. 311, the court said: "It is difficult for us to conceive of a more evil and dangerous proposition than that one who intrudes into or usurps a public office, assumes its duties and exercises its powers, can commit official crimes and shield himself from punishment by alleging that his crimes were only additions to his intrusion or usurpation. Admissions on which another is induced to act become conclusive on the party making them, and it is immaterial whether they were made innocently or fraudulently. \* \* \* If this be true, what satisfactory reason can be given for not applying the same principle to one who deliberately assumes and exercises the duties and powers of a public office? He holds himself out to the world as an officer. He becomes entitled to protection as such. He can exercise the duties and take the emoluments until he is ousted, and he must be amenable as if he was the rightful officer."

The plaintiffs in error were properly found guilty of contempt, and the judgment of the Appellate Court affirming the judgment of the county court is affirmed.

*Judgment affirmed.*