(No. 90318

PERVIS DANIELS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Archibald Candy Company, Appellee).

*Opinion filed March 21, 2002.—Rehearing denied August 29, 2002.*

Ann-Louise Kleper, of Lewis, Davidson & Hetherington, Ltd., of Chicago, for appellant.

Nyhan, Pfister, Bambrick, Kinzie & Lowry, P.C., of Chicago (Edward M. Pfister and Bruce D. Crofts, of counsel), for appellee.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for the Industrial Commission of Illinois.

CHIEF JUSTICE HARRISON delivered the judgment of the court:

Claimant, Pervis Daniels, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)), alleg-

ing that while in the employ of respondent, Archibald Candy Company, he injured his back while lifting a kiln. An arbitrator awarded claimant $593.11 per week in temporary total disability (TTD) benefits for a period of $57^6/_7$ weeks (see 820 ILCS 305/8(b) (West 1992)), $7,828.25 in medical expenses (see 820 ILCS 305/8(a) (West 1992)), and additional compensation pursuant to sections 16, 19(k), and 19(l) of the Act (see 820 ILCS 305/16, 19(k), (l) (West 1992)). On review, the Industrial Commission (Commission) determined that claimant was entitled to TTD benefits for a period of only $14^5/_7$ weeks. The Commission also vacated the awards of additional compensation and medical expenses. The circuit court of Cook County confirmed the Commission's decision.

Daniels then appealed to the Industrial Commission division of the appellate court, contending that the Commission's decision was void because the panel that rendered it was illegally constituted. Daniels also argued, in the alternative, that the Commission's findings as to causal connection, TTD benefits, medical expenses and additional compensation were against the manifest weight of the evidence. The appellate court rejected both of Daniels' arguments and affirmed the judgment of the circuit court over the dissent of two judges. 315 Ill. App. 3d 580. Three of the five members of the appellate court panel which heard the case subsequently certified that it involved a substantial question warranting review by this court. We then granted Daniels' petition for leave to appeal. See 177 Ill. 2d R. 315(a). For the reasons that follow, we now reverse and remand.

When Archibald Candy, Daniels' employer, sought review of the arbitrator's award by the Commission, the case was assigned to panel "B," consisting of Commissioners John Hallock, Jr., Barry Ketter and Linzey Jones. Before the matter was heard and decided, however, Commissioner Hallock was elevated to the post of acting Com-

mission chairman, then Commission chairman, and Commissioner Jones resigned following a medical leave of absence.

The promotion of Hallock and the resignation of Jones left two vacancies in the office of commissioner. Under section 13 of the Act (820 ILCS 305/13 (West 1992)), responsibility for appointing commissioners and for filling vacancies in the office of commissioner is vested in the Governor "by and with the consent of the Senate." Where the vacancy occurs while the Senate is in recess, the Governor is empowered to make a temporary appointment until the next meeting of the Senate, at which time he is to nominate some person to fill the position. 820 ILCS 305/13 (West 1992).

Those procedures were not followed here. The Governor neither appointed nor nominated replacements for Hallock and Jones as specified in the Act. Instead, Hallock, in his capacity as the new Commission chairman, appointed a succession of arbitrators to temporarily fill his old Commission post and to fill the post formerly occupied by Jones. Arbitrator Kathleen Hagan took Hallock's post on panel "B," serving as acting commissioner during the initial six-month period following his promotion. Arbitrator David Kane then succeeded her as acting commissioner during the subsequent six-month period.

When Commissioner Jones first went on medical leave and then resigned his office, the chairman designated arbitrator Calvin Tansor to serve as acting commissioner on panel "B" in his place. Tansor served for six months and was then replaced by arbitrator Joseph Reichart, who was designated to serve as acting commissioner for the following six-month period.

There is authority under section 13 of the Act (820 ILCS 305/13 (West 1992)) for the chairman to designate an arbitrator to serve as an acting commissioner for up to six months, but that authority is reserved for situa-

tions where the sitting commissioner remains in office but "is or will be unavailable to fulfill [his or her] responsibilities." Accordingly, it was inapplicable to the appointments of Hagan and Kane, because Hallock, the commissioner in whose stead they were appointed, was never "unable to fulfill the responsibilities of his *** office." He vacated his office completely upon being named acting chairman and then chairman.

Section 13 did apply to the designation of Calvin Tansor to serve for Linzey Jones because Jones' initial absence from work was due to a medical leave. Once Jones resigned, however, his post became vacant too. Since he was now out of office, rather than being temporarily "unavailable" to work, his responsibilities could no longer be performed by an arbitrator acting in his place. Tansor's authority to serve as acting commissioner came to an end, and the chairman had no power to designate Reichart as a successor acting commissioner. Instead, it was up to the Governor to appoint a replacement for Jones by and with the consent of the Senate.

Such a conclusion is the only one consistent with the purposes of the Act. The law is carefully designed to insure that the Industrial Commission represents a balance of interests. Under the law the Governor is required to make his appointments to the Commission in such a way that two members represent employers, two represent employees, and three are representative of citizens "not identified with either the employing or employee classes." 820 ILCS 305/13 (West 1992). In addition, not more than four of the members may be of the same political party. Arbitrators designated to serve as acting commissioners are not subject to this partisanship restriction and are deemed to be representative of citizens "not identified with either the employing or employee classes." 820 ILCS 305/13 (West 1992). Accordingly, if arbitrators could be designated as acting commissioners even after

the commissioners whose workload they were handling left office, there would be no mechanism to insure that the balance of interests contemplated by the Act would be preserved. Through contrived designations and inaction by the Governor, the departure from office of sitting commissioners could be exploited to pack the Commission with members of the Governor's political party or representatives of whatever economic class the Governor favored. Such a result would be directly contrary to the Act's objectives.

The present case was reviewed by the Commission during a time when arbitrators Reichart and Kane were both serving as acting commissioners on panel "B" through appointment by the chairman. Their votes were necessary to the decision in this case. The question we must therefore now address is what effect the absence of statutory authority for Kane's and Reichart's appointments had on the validity of their decision.

Central to resolution of that question is the Industrial Commission's status as an administrative agency. Because it is an administrative agency, the Commission has no general or common law powers. The only powers it possesses are those granted to it by the legislature. Any action it takes must be specifically authorized by statute. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243-44 (1989).

Where an administrative agency acts outside its specific statutory authority, as the Commission did when it appointed Kane and Reichart, it acts without jurisdiction. Its actions are void, a nullity from their inception. See *Siddens v. Industrial Comm'n*, 304 Ill. App. 3d 506, 510-11 (1999). The appointment of Kane and Reichart therefore had no legal effect.

Our appellate court recently considered a similar situation in *Gilchrist v. Human Rights Comm'n*, 312 Ill. App.

3d 597 (2000). In *Gilchrist,* the Commission rendered a decision based on the recommended order and decision of an administrative law judge. On reviewing the record, the appellate court discovered that the administrative law judge who had authored the recommended order and decision had not presided over the public hearing, as the Illinois Human Rights Act required. Because that administrative law judge had not presided, the Commission had no statutory authority to assign him to the case. Because his assignment exceeded the Commission's authority, the decision based on his recommended order and decision was likewise unauthorized. The court therefore declared it to be void.

The qualifications of Kane and Reichart were not challenged prior to the appeal to the appellate court. That, however, is of no consequence. Because agency action for which there is no statutory authority is void, it is subject to attack at any time in any court, either directly or collaterally. *Business & Professional People,* 136 Ill. 2d at 243-44. Even if the parties themselves do not raise the question, courts have an independent duty to vacate and expunge void orders and thus may *sua sponte* declare an order void. See *Siddens,* 304 Ill. App. 3d at 511. That is precisely what occurred in *Gilchrist.*

Finally, we reject the Commission's claim that the decision in this case can be validated on the grounds that Kane and Reichart were *de facto* officers. The doctrine recognizing *de facto* public officers prevents third parties or members of the public from raising collateral challenges to a public officer's qualifications to hold office if considerations of public policy require the officer's acts to be considered valid. See *People ex rel. Rusch v. Wortman,* 334 Ill. 298, 301-02 (1928). No considerations of public policy militate in favor of preventing workers' compensation claimants from challenging the legal status of the commissioners who passed on their claims where,

as here, the challenge is raised on direct review of the workers' compensation award and the commissioners were appointed in a manner that threatens the Act's basic objectives.

For the foregoing reasons, the decision of the Commission at issue in this case is vacated, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the Commission for a decision by a legally constituted panel.

*Reversed and remanded.*

JUSTICE McMORROW, specially concurring:

This case began when Daniels filed an application for adjustment of claim pursuant to the Workers' Compensation Act. 820 ILCS 305/19 (West 1992). An arbitrator issued a decision, awarding certain benefits to Daniels. A three-member panel of the Industrial Commission reduced the arbitrator's award and Daniels sought administrative review in the circuit court of Cook County. After the circuit court confirmed the Commission's decision, appeal was taken to the Industrial Commission division of the appellate court. There, for the first time, Daniels argued that the decision of the Industrial Commission was void because two members of the panel which considered and decided his case (Kane and Reichart) were appointed acting commissioners in violation of the Workers' Compensation Act. In support of this contention, Daniels submitted to the appellate court an affidavit, signed by his attorney, attesting to the composition of panel "B" of the Industrial Commission, which reviewed his case. The Industrial Commission, in response, filed with the appellate court an affidavit by Kathryn A. Kelley, chief legal counsel for the Industrial Commission, verifying the history of the designation of acting commissioners.

Based on all of the information submitted, the appellate court considered and rejected Daniels' claim that

Kane and Reichart had been improperly appointed and then affirmed the judgment of the circuit court. Two justices dissented, agreeing with Daniels that the appointments of Kane and Reichart were not made in accordance with statutory procedures, their appointments were invalid, and, thus, the Industrial Commission's decision was rendered void. Upon denying Daniels' petition for rehearing, three of the five appellate justices certified that the case presented a "substantial question which warrants consideration by the supreme court." We granted Daniels' petition for leave to appeal.[1]

Justice Thomas' dissent lodges criticisms against this court for the court's consideration of the certified question. The dissent contends that this court should not address the issue of first impression presented in this case, *i.e.*, whether section 13 of the Workers' Compensation Act (820 ILCS 305/13 (West 1992)) authorizes the chairman to designate a certified arbitrator to serve as an acting commissioner when a *permanent* vacancy occurs in the office of the commissioner or whether that vacancy must be filled by the Governor. In the dissent's view, this court need not examine the statutory provision to determine the proper method for appointing commissioners because the question of whether the panel of commissioners was validly constituted is not properly before this court. The dissent believes this issue is procedurally

---

[1]In a brief submitted to this court, the Industrial Commission sets forth a detailed factual statement concerning the composition of the Industrial Commission and appointment procedures followed. The Industrial Commission does not contest in this court the propriety of considering the supplemental evidence submitted by affidavit. Rather, citing to this court's decision in *Ziegler v. Industrial Comm'n*, 51 Ill. 2d 137, 142 (1972), the Commission states in its brief that the affidavits "were presented to the appellate court *** on the grounds that additional information may be provided to the court to aid in determining whether or not the acts of the Commission and Chairman were authorized."

defaulted or "waived," based on the fact that Daniels first challenged the Commission's validity in the appellate court. The dissent states, "I am genuinely troubled by the fact that the court inflicts such a broadside in the *obvious absence of jurisdiction over this case.*" (Emphasis added.) 201 Ill. 2d at 181 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.). Thus, the dissenting justices believe that the alleged procedural default or "waiver" not only makes it unnecessary to consider the matter, it deprives this court of jurisdiction to consider whether the Industrial Commission was validly constituted. Further, Justice Thomas, citing to *Newkirk v. Bigard,* 109 Ill. 2d 28 (1985), contends that this court need not address Daniels' claim that the illegal appointment of commissioners rendered their decision void. According to the dissent, pursuant to *Newkirk,* we can summarily reject Daniels' voidness argument because the case at bar presents a *collateral attack* on the judgment and nothing on the face of the order indicates that the Commission lacked jurisdiction over the parties, jurisdiction over the subject matter, or the inherent power to make or enter the particular order involved. 201 Ill. 2d at 182-84 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.).

*Newkirk,* however, does not support Justice Thomas' position. In *Newkirk,* plaintiffs never sought administrative review of the mining board order at issue. Instead, two years after the order was entered, plaintiffs brought a declaratory judgment action, seeking to have the mining board's order declared void *ab initio* because it did not contain certain provisions. We first examined the statute, which provided that integration orders "shall" contain election provisions and equitable alternatives. *Newkirk,* 109 Ill. 2d at 32-33. Then, after discussing the distinction between an action for judicial review and a *collateral attack,* this court held that the mining board's

failure to include the provisions in its order was error which made the order voidable, but not void. The fact that the order contained errors did not cause the agency to lose jurisdiction. *Newkirk*, 109 Ill. 2d at 37.

I note that, in the present case, unlike the situation in *Newkirk*, Daniels is seeking judicial review of an Industrial Commission's decision. Although Daniels did not question the validity of the panel of commissioners when he appeared before that tribunal, he did so when the case was in the appellate court. Thus, while Daniels may have been untimely in raising the issue, that fact does not convert this case into a collateral proceeding.

More importantly, I point out that, in *Newkirk*, this court did not summarily dispose of the voidness argument. We found it necessary to examine the pertinent statutory provision to determine whether the mining board's order contained error *before deciding* whether the order was void. It was only after we had examined the statute and found that the order contained error— the failure to include certain provisions and equitable alternatives—that we were able to determine that, because of the nature of the error, jurisdiction was unaffected. Having made that assessment, we were able to conclude that the error did not render the order void. Further, in that case, because the order was being attacked collaterally, no remedy was available.

I believe that this court is similarly bound, in the present case, to examine the pertinent statutory provisions to determine whether, as Daniels contends, two of the commissioners on his panel were illegally appointed. The Industrial Commission is an administrative body created by legislative enactment, which can only enter such orders as are within its statutorily granted powers. See *Michelson v. Industrial Comm'n*, 375 Ill. 462 (1941); *Central Illinois Public Service Co. v. Pollution Control Board*, 36 Ill. App. 3d 397 (1976) (it is a commanding

tenet of administrative law that an administrative agency and its officers may exercise only those powers conferred upon them by statute). Daniels is arguing that, because two of the commissioners who reviewed his claim were not appointed in conformity with the statute, the "Commission" which reviewed his claim did not legally exist and, therefore, it had no inherent power to act and could exercise no personal or subject matter jurisdiction over him. Lacking jurisdiction, the decisions rendered by the Commission would be void.

It is true that, as a general proposition, issues not raised before an administrative agency will be deemed "waived" for purposes of review. Voidness, however, is a fundamental defect that cannot be waived by a failure to object. Whether there is a lack of jurisdiction which renders a judgment void is a matter which can be raised at any time (*City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112 (1976)), either on direct review or collaterally, as in *Newkirk*. Thus, Daniels' argument that the Industrial Commission's decision is void must be addressed. Here, as in *Newkirk*, it is only after this court determines whether the appointments constituted error that this court can consider whether the error is serious enough to constitute a jurisdictional defect. In other words, this court can make no reasoned decision on Daniels' voidness claim unless this court first determines whether there was error in the appointment procedures followed and whether the error was of such a nature that it affected the Commission's jurisdiction.

Finally, even if there were a reasoned means to summarily dispose of Daniels' voidness argument, procedural default or "waiver" would pose no barrier to our consideration of Daniels' claim that the Industrial Commission panel which reviewed his case was illegally constituted. The fact that Daniels' attack on the validity of the commissioners' appointments may have been

untimely and, thus, subject to procedural default does not mean that this court is without jurisdiction to consider the matter. The general rule that issues or defenses not raised before an administrative agency will be deemed waived and will not be considered for the first time on administrative review is an admonition to the parties, not a limitation on the court's jurisdiction. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998). It has long been recognized that the waiver rule may be relaxed in order to maintain a uniform body of precedent or may be relaxed where the interests of justice so require. *Hux v. Raben*, 38 Ill. 2d 223 (1967); *Caterpillar, Inc. v. Doherty*, 299 Ill. App. 3d 338 (1998). As stated in *Wadlington v. Mindes*, 45 Ill. 2d 447, 453 (1970), the waiver rule "is not a rigid or inflexible one, and, where injustice might otherwise result, a reviewing court may consider questions of law not passed upon by an administrative agency." See also *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991).

Here, in the course of seeking judicial review of the Commission's ruling, Daniels called into question the legitimacy of the appointment procedures being followed by that administrative body. The matter presented a question of statutory construction—a legal question— which could readily be answered by a reviewing court. Moreover, a decision on whether the appointment procedures were in conformance with statutory requirements is a matter of significant importance. As Chief Justice Harrison notes in his plurality opinion, if commissioners are not appointed in conformity with the statute, there exists the potential for undermining "the balance of interests contemplated by the Act." 201 Ill. 2d at 165. Under these circumstances, I believe the interests of justice require that the matter be addressed.

Turning now to the merits, I fully concur with Chief

Justice Harrison's interpretation of the Worker's Compensation Act.[2] I agree that the statute, properly construed, mandates a finding that two of the three commissioners who sat on the panel reviewing Daniels' case (Kane and Reichart) were not appointed in conformity with statutory requirements. However, I do not agree with Chief Justice Harrison as to the consequences which must follow from this conclusion. Although the chairman of the Industrial Commission did not have the statutory authority to appoint Kane and Reichart to "permanent" vacancies on the Commission, Kane and Reichart were appointed to the office of commissioner and exercised the duties of the office under color of law. The decisions in which they participated are not void. The common law *de facto* officer doctrine operates to prevent invalidation of those decisions. See *People ex rel. Hicks v. Lycan*, 314 Ill. 590, 593 (1924) ("Whether the board of review was legally constituted or not, the persons acting as such board members were performing the duties of the board with apparent right under color of office, and their acts were valid as to the public and persons having an interest in them"). In this respect, I agree with Justice Fitzgerald's separate dissent.

The definition of a *de facto* officer, set forth in *State v. Carroll*, 38 Conn. 449, 471-72 (1871), and adopted by this court in *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 301 (1928), is as follows:

"An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised *** under color of a known election or

---

[2]It should be emphasized that four members of this court, Chief Justice Harrison, Justice Freeman, Justice Kilbride and I, agree with the Chief Justice's interpretation of the Workers' Compensation Act. Thus, there is a binding opinion of the court on this issue.

appointment [which was] void because the officer was not eligible or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public."

Although the common law *de facto* officer doctrine has its roots in antiquity, it has retained its vitality through the years because of its practicality. See *In re Fichner*, 144 N.J. 459, 677 A.2d 201 (1996); K. Clokey, Note, *The De Facto Officer Doctrine: The Case for Continued Application*, 85 Colum. L. Rev. 1121 (1985). The United States Supreme Court in *Ryder v. United States*, 515 U.S. 177, 180-81, 132 L. Ed. 2d 136, 142, 115 S. Ct. 2031, 2034 (1995), quoting 63A Am. Jur. 2d *Public Officers & Employees* § 578, at 1080-81 (1984), states:

> " 'The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.' "

Pursuant to the *de facto* officer doctrine, a litigant may be prevented from contesting the legality of the acts of an officer by calling into question the validity of the officer's title to office. This doctrine, however, like any other equitable doctrine, must not be applied mechanically. As noted in *Glidden Co. v. Zdanok*, 370 U.S. 530, 535-36, 8 L. Ed. 2d 671, 678-79, 82 S. Ct. 1459, 1465 (1962), "[t]he rule does not obtain, of course, when the alleged defect of authority operates also as a limitation on this Court's appellate jurisdiction *** [or] when the statute claimed to restrict authority is not merely technical but embodies a strong policy concerning the proper administration of judicial business, [so that] this Court has treated the alleged defect as 'jurisdictional' and agreed to consider it on direct review even though not raised at the earliest practicable opportunity *** [or] when the challenge is based upon nonfrivolous constitu-

tional grounds." It also has been held that the *de facto* officer doctrine should not be invoked when an officer's appointment is in violation of a statute and the officer lacks certain qualifications which were statutorily required for the benefit and protection of the individual subject to the officer's authority. See, *e.g.*, *United States v. Beltran*, 306 F. Supp. 385 (N.D. Cal. 1969) (statutory requirement that draft status be determined by "neighbors" was held sufficiently important to allow draft resister to challenge qualifications of draft board members).

In the present case, the error in the composition of the panel of commissioners who reviewed Daniels' claim stemmed from a statutory, not a constitutional, violation. Moreover, it has never been alleged that the commissioners who were not validly appointed were otherwise unqualified to hold their positions. Nor has it been claimed that these commissioners' appointments were the result of malfeasance or a deliberate attempt to subvert the goals of the Act. Kane and Reichart exercised the duties of their office under color of lawful appointment, which only now has been found to be defective. For this reason, I would hold that the decisions rendered by Kane and Reichart may be afforded *de facto* validity. Applying the *de facto* officer doctrine to uphold the many decisions of the duly-appointed commissioners, despite defects in their appointments, serves the public's interest in promoting the orderly functioning of the Commission. See *Ryder v. United States*, 515 U.S. 177, 180-81, 132 L. Ed. 2d 136, 142, 115 S. Ct. 2031, 2034 (1995).

Applying the *de facto* doctrine to the plaintiff's case at bar, however, would, in my view, run counter to a competing public interest—uncovering illegal appointment procedures, thereby ensuring that administrative agencies comply with the statutory mandates which govern them. Accordingly, I believe that the equities, on

balance, militate against application of the *de facto* officer doctrine in the case at bar, to deny Daniels review by a properly constituted panel of commissioners.

If it were the established law of this state that the *de facto* officer doctrine always applied to validate all decisions of the Commission, there would be little or no incentive for claimants, such as Daniels, to bring illegalities in the appointment of commissioners before the judiciary for review. Claimants would have no reason to bring irregularities, such as those in the case at bar, to the attention of the courts if it were the rule that they could never obtain relief. In my view, the *de facto* officer doctrine should not be employed in such a way that it forecloses judicial review of matters, such as irregularities in appointment procedures, when brought to the attention of the judiciary as a matter of first impression. The public clearly has an interest in having illegal actions uncovered, reported and addressed by the courts. Therefore, it is not in the public's interest to implement a rule of equity so broadly that it eliminates the incentive to bring illegal actions to light.

The position I take in this opinion—permitting Daniels, but no others, to have a new hearing—strikes an equitable balance between the identified competing interests. By permitting the claimant who brought the illegal appointments to light to receive a new hearing, the incentive to discover and pursue such illegality is maintained. Once the matter has been litigated and decided by the courts, however, the public interest in uncovering and addressing illegality is served. At that juncture, the public interest in preserving the validity of a large multitude of commission decisions takes precedence. Public policy and competing public interests often require courts to draw equitable lines. That line is best drawn in this case by permitting Daniels a new hearing, but by applying the *de facto* officer doctrine to maintain

the validity of the decisions rendered by the illegally composed commission in other cases. This is precisely the result that was reached by the New Jersey Supreme Court in *In re Fichner*, 144 N.J. 459, 677 A.2d 201 (1996).

In *Fichner*, the respondent appealed after he was sanctioned by the Board of Examiners of Master Plumbers. Eighteen months after the appeal was filed, respondent moved to amend the appeal to add a claim that the board was illegally constituted because three members of the seven-member board, though duly appointed, lacked certain qualifications. The appellate court refused to apply the *de facto* officer doctrine and examined the qualifications of the board members. Finding that three members were ineligible, the appellate court remanded for a new hearing. The New Jersey Supreme Court, however, concluded that the board's decisions were valid by application of the *de facto* officer doctrine, yet "was satisfied" to let the appellate court's disposition stand. *In re Fichner*, 144 N.J. at 471, 677 A.2d at 207. The supreme court stated:

> "We believe that a remand for reconsideration of the matter by a properly composed board will serve the interests of the public and the licensee in this case." *In re Fichner*, 144 N.J. at 471, 677 A.2d at 207.

Here, too, I am persuaded that, under the particular circumstances of this case, Daniels should be granted a remand so that a properly constituted panel of commissioners can review the arbitrator's award on his workers' compensation claim.

In sum, I find that Daniels' claim that the improper appointment of Commissioners Kane and Reichart rendered the Commission's decision void in this case is a matter properly addressed by this court. Although there was a procedural default because Daniels failed to challenge the validity of the appointments before the Board, the claim of voidness, like a claim of plain error, had to be examined substantively before it could be disposed of.

Having examined the statute, I find, like Chief Justice Harrison, that the Chairman of the Industrial Commission did not have the authority to appoint commissioners to fill "permanent" vacancies. For this reason, the appointments of Kane and Reichart were not valid.

Nevertheless, faced with the possibility of upheaval—of invalidating the hundreds of decisions rendered by the illegally constituted panel—I would opt to preserve the integrity of those decisions. The invalid appointments of Kane and Reichart did *not* render void every decision of the Commission in which Kane and Reichart participated. Kane and Reichart were appointed under color of law and, according to the common law *de facto* officer doctrine, their decisions are given *de facto* validity.

At the same time, I believe providing Daniels with an opportunity to have his worker's compensation award reviewed by a properly constituted panel of commissioners promotes the public's interest in having illegalities brought to the court's attention for review. This court would not be ruling favorably or unfavorably on the merits of Daniels' claim, but merely be providing him with a hearing on his substantive claim. Again, I emphasize that I reach this conclusion, not for the court to show favoritism to Daniels, but because granting him a hearing before a duly constituted panel best serves the public interests. For this reason, I join Chief Justice Harrison in concluding that this matter should be reversed and remanded for further proceedings.

JUSTICE FREEMAN joins in this special concurrence.

JUSTICE FITZGERALD, dissenting:

I agree with the view expressed in Justice Thomas' dissent—the record in this case precludes consideration of whether Commissioners Kane and Reichart were ap-

pointed in conformity with the Act. Therefore, I join in his dissent. I write separately, however, to express an additional basis for dissenting—my disagreement with Chief Justice Harrison's conclusion that the acts of Kane and Reichart are not valid under the *de facto* officer doctrine. I would hold that Kane and Reichart were at least *de facto* commissioners with authority to act.

Under the *de facto* officer doctrine, "[a] person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned." *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960). On grounds of public policy and justice, the acts of a *de facto* officer are as valid as the acts of an officer *de jure*. *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 302 (1928); see also 63C Am. Jur. 2d *Public Officers & Employees* § 23 (1997) (purpose of the *de facto* officer doctrine is to "protect the public's reliance on an officer's authority and to ensure the orderly administration of government"). Importantly, an officeholder's eligibility to appointment and the validity of his or her official acts may be challenged only in a proceeding brought directly for that purpose. *Wortman*, 334 Ill. at 301; see also *People v. Woodruff*, 9 Ill. 2d 429, 437 (1956); *Cleary v. Chicago Title & Trust Co.*, 4 Ill. 2d 57, 58-59 (1954) (title to a public office cannot be questioned in a mere collateral proceeding).

In *Chillicothe Township*, we applied the *de facto* officer doctrine and held valid the actions of a county board of review increasing the assessed valuation of the plaintiffs' property. It was stipulated that, based upon the results of the immediately prior general election, the county board of review should have been composed of two Republicans and one Democrat. The board, however, was composed of two Democrats and one Republican.

The plaintiffs argued that because the board was improperly constituted, its actions increasing the assessments were unconstitutional and void. We rejected the plaintiffs' argument:

> "Whether the Board of Review was legally constituted or not, the persons acting as such board were performing the duties of the board with apparent right under color of office, and their acts were thus valid as to the public and persons having an interest in them. [Citation.] The Board of Review was thus composed of, at least, *de facto* officers, and from a review of the record and the authorities presented, its acts were apparently valid." *Chillicothe Township*, 19 Ill. 2d at 426-27.

We reached a similar conclusion in *People v. O'Neill*, 33 Ill. 2d 184 (1965). In *O'Neill*, the State brought an action against the defendant taxpayer for delinquent personal property taxes. The defendant argued that the county board of supervisors was not validly constituted because each township had one supervisor on the board without regard to population, thus violating the "one man, one vote" rule. According to the defendant, because the composition of the board was unconstitutional, its act of levying the personal property tax was illegal. We rejected the defendant's argument:

> "We think it is clear beyond question that the members of the Peoria County board of supervisors were at least *de facto* officers within the traditional definition ***. Their acts in levying, extending and collecting taxes cannot therefore be attacked because of some alleged defect in the apportionment of their membership." *O'Neill*, 33 Ill. 2d at 187.

See also *People ex rel. Engle v. Kerner*, 32 Ill. 2d 212, 222-23 (1965) (holding that state senators, although elected from unconstitutionally apportioned districts, were *de facto* officeholders with authority to act); *Cleary*, 4 Ill. 2d at 59 (holding that, even assuming the invalidity of the appointment of appellate court justices, such appointment still conferred color of office, and judgments

rendered thereunder were valid); *Wortman*, 334 Ill. at 303-04 (affirming judgment holding election judge and clerk in contempt for malfeasance in their offices where, although their appointments were contrary to statute, they were *de facto* election officers); *Lavin v. Board of Commissioners*, 245 Ill. 496, 505-06 (1910) (holding that, without regard to whether the court had authority to appoint defendant a special State's Attorney, defendant was at least a *de facto* special State's Attorney and entitled to compensation).

Here, Daniels' challenge to the appointments of Kane and Reichart, raised for the first time in the appellate court, amounts to an improper collateral attack on their office. Even assuming that Kane and Reichart were not appointed in accordance with the governing statute, they were at least *de facto* commissioners with authority to act. Accordingly, I dissent.

JUSTICE THOMAS, also dissenting:

While the plurality purports to invalidate only "the decision of the Commission at issue in this case" (201 Ill. 2d at 167), the plurality in fact invalidates this and *every other decision of the Commission* in which Commissioners Kane and Reichart participated. Indeed, if, as the plurality insists, Commissioners Kane and Reichart were not lawfully appointed, the consequence of their unlawful appointments cannot, on any principled basis, be confined to this case. As sobering as I find the catastrophic sweep of today's decision, I am genuinely troubled by the fact that the court inflicts such a broadside in the obvious absence of jurisdiction over this case. Faced with such gratuitous overreaching, I have no choice but to dissent.

Understandably, the plurality's discussion of the procedural posture of this case is incomplete. After reading the plurality opinion, the uninformed reader might justifiably assume that the issue addressed by the plural-

ity (*i.e.*, whether Commissioners Kane and Reichart were lawfully appointed) was litigated below and properly preserved for review. In fact, nothing could be further from the truth. Daniels *did not* contest the appointments of Kane and Reichart before the Commission, and he *did not* contest their appointments on administrative review. Instead, Daniels waited until he was before the appellate court to first raise the issue addressed in the plurality opinion. Even worse, the factual basis for Daniels' claim is found not in the record on appeal but in an affidavit from Daniels' counsel that was attached *without leave of court* as an appendix to Daniels' appellate court brief.

Of course, it is well established that, in reviewing a decision of the Commission, a court may consider only the record and arguments that were before the Commission. *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 308 (1996). Arguments raised for the first time on appeal are waived. *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 336 (1980). Here, neither the Commission nor even the circuit court considered the legality of the acting commissioners' appointments, as Daniels raised this issue for the first time in the appellate court. And the factual basis for that claim was never litigated and is found nowhere in the record on appeal. The issue therefore is waived, plain and simple.

But no. Eager to dismantle countless Commission decisions, the plurality ignores the obvious waiver in this case and simply proclaims every action taken by Commissioners Kane and Reichart "void." 201 Ill. 2d at 165. What the plurality must have in mind is that, if they call the panel's decision "void," then that decision is open to collateral attack. See, *e.g.*, *Weingart v. Department of Labor*, 122 Ill. 2d 1, 17-18 (1988). But this cannot be, as "a party cannot collaterally attack an agency order \*\*\* unless the order is *void on its face* as being unauthorized by statute." (Emphasis added.) *Newkirk v. Bigard*, 109

Ill. 2d 28, 39 (1985); *John O. Schofield, Inc. v. Nikkel,* 314 Ill. App. 3d 771, 779-80 (2000). And while Daniels' attack is surely collateral, nothing on the face of the Commission's order renders it void.

On the distinction between a direct and collateral attack, this court has explained:

"A direct attack may be based upon infirmities in the judgment which render the judgment void as well as those defects which make it merely voidable. On the other hand, a collateral attack is limited to those defects which are of a character to render the judgment void on jurisdictional grounds. A direct attack on a judgment is a proceeding instituted for the very purpose of avoiding or correcting a judgment in some particular *and is brought in the same action and in the same court.* *** 'The judgment of a court is collaterally assailed when it is sought to be impeached *in an action other than that in which it was rendered.*' [Citations.] A direct attack may be made *by motion or petition *** filed in the same cause in which the original judgment was entered.*" (Emphases added.) *City of Des Plaines v. Boeckenhauer,* 383 Ill. 475, 480-81 (1943).

Similarly, this court has explained the distinction between a direct and collateral attack as follows:

"An application to vacate a judgment or decree, *made to the court that rendered it within thirty days after its entry,* is a direct attack upon the judgment or decree, but if made *after the expiration of thirty days* it is a collateral attack." (Emphases added.) *Barnard v. Michael,* 392 Ill. 130, 135 (1945).

See also *People v. O'Keefe,* 18 Ill. 2d 386, 391 (1960).

Thus, under this court's established precedent, a direct attack on a judgment is one that is brought (1) by motion or petition, (2) in the same court that rendered the judgment, (3) in the same cause in which the judgment was rendered, and (4) within 30 days after the judgment's entry. All other attacks (*i.e.,* attempts to vacate a judgment as void) are collateral. Here, the Commission entered its order on June 25, 1997. Daniels first attacked that order 632 days later on March 19, 1999,

and he did so not before the Commission, which rendered the order, but in the appellate court. Clearly, under *Newkirk*, *Barnard*, and *O'Keefe*, Daniels' attack is collateral.

The special concurrence posits that "while Daniels may have been untimely in raising the issue, that fact does not convert this case into a collateral proceeding." 201 Ill. 2d at 170 (McMorrow, J., specially concurring, joined by Freeman, J.) No, it does not. This undeniably remains a direct appeal. But such untimeliness *does* render collateral Daniels' attack on the judgment. What the special concurrence misses is that whether the Commission's order is on direct review *has nothing to do with* whether an attack leveled against that judgment is direct or collateral. Again, a direct attack on a judgment is one that is brought (1) by motion or petition, (2) in the same court that rendered the judgment, (3) in the same cause in which the judgment was rendered, and (4) within 30 days after the judgment's entry. All other attacks (*i.e.*, attempts to vacate a judgment as void) are collateral. Thus, *as this court defines it*, a direct attack may be brought only before a direct appeal is taken. Once a direct appeal is taken, any new attack is, *by definition*, collateral. Admittedly, some confusion is bound to creep in whenever the same adjective precedes two distinct legal concepts. Nevertheless, "direct appeal" and "direct attack" remain distinct.[3]

Given that Daniels' attack is collateral, that attack is permissible only if the Commission's order is void on its face. *Newkirk*, 109 Ill. 2d at 39. An agency's order is void if the agency lacks (1) jurisdiction over the parties, (2)

---

[3]To its credit, the special concurrence draws the line at arguing that Daniels' attack—which was raised for the first time in the appellate court some 632 days after entry of the Commission's order—was in fact raised for the first time before the Commission and within 30 days of the order's entry.

jurisdiction over the subject matter, or (3) the inherent power to make or enter the particular order involved. *Newkirk*, 109 Ill. 2d at 36. Here, nothing *on the face of the order* renders the Commission's decision void. *On its face*, the order poses no problems concerning personal jurisdiction, as both Daniels and Archibald participated freely and fully throughout the Commission proceedings. Likewise, *on its face*, the order poses no problems concerning subject matter jurisdiction, which this court defines as an agency's power to "hear and determine causes of the general class of cases to which the particular case belongs." *Newkirk*, 109 Ill. 2d at 36. The Commission's subject matter jurisdiction includes the power to hear and determine all disputed questions arising under the Act (820 ILCS 305/18 (West 1998)), and the order is confined to such questions. Finally, *on its face*, the order is one that the Commission possesses the inherent power to enter. Indeed, the Commission's order is confined to settling disputed questions specifically arising under the Act, including Daniels' claims for temporary total disability benefits (820 ILCS 305/8(b) (West 1998)), medical expenses (820 ILCS 305/8(a) (West 1998)), attorney fees (820 ILCS 305/16 (West 1998)), penalties (820 ILCS 305/ 19(k) (West 1998)), and additional compensation (820 ILCS 305/19(l) (West 1998)). The Commission's decision therefore is neither void on its face nor subject to collateral attack.

This conclusion is confirmed by the fact that the factual basis for Daniels' collateral attack—*i.e.*, the manner in which acting Commissioners Kane and Reichart were appointed—appears nowhere in the record on appeal, least of all on the face of the contested order. Again, Daniels' entire argument before this court is based upon two affidavits, one from Daniels' attorney that was attached to Daniels' appellate court brief and one from the Commission's attorney that was attached to the Commis-

sion's appellate court brief. Yet Daniels concedes that neither he nor the Commission sought or received leave from the appellate court to supplement the record on appeal with these affidavits, and this court likewise extended no such leave. Given that *Newkirk* authorizes a collateral attack only where an agency order is void on its face, an obvious question arises: How can an order be void on its face where the "facts" that allegedly render the order void appear nowhere on the face of the order but only in unauthorized affidavits wholly outside the record? The answer—like the question—is obvious: such an order *cannot* be void on its face and therefore, under *Newkirk*, cannot be collaterally attacked.[4]

. In conclusion, I note only that, unlike the appellate court, this court cannot issue nonprecedential orders under Supreme Court Rule 23 (166 Ill. 2d R. 23). On the contrary, every decision of this court establishes law for the State of Illinois. The tragedy of today's decision is that, in an effort to do justice in this particular case, the plurality not only upsets countless decisions of the Industrial Commission but also turns appellate procedure on its head for all future cases.

I dissent.

JUSTICES FITZGERALD and GARMAN join in this dissent.

---

[4]While the special concurrence insists that this court has the power—indeed, the duty—to consider whether Commissioners Kane and Reichart were properly appointed (201 Ill. 2d at 170-72 (McMorrow, J., specially concurring, joined by Freeman, J.)), the special concurrence nowhere explains how, on direct appeal, this court can consider factual matters that are wholly outside the record. Of course, the simple explanation for this oversight is that we can't.