# Illinois Official Reports

## Appellate Court

***Salisbury v. Illinois Workers' Compensation Comm'n*, 2017 IL App (3d) 160138WC**

| | |
|---|---|
| Appellate Court Caption | MARIE SALISBURY, Widow of Charles Salisbury, Deceased, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Frank's Flying Service, Inc., Appellee). |
| District & No. | Third District<br>Docket No. 3-16-0138WC |
| Filed<br>Rehearing denied | January 4, 2017<br>June 9, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 13-MR-95; the Hon. Terence M. Patton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Emmanuel F. Guyon, of Streator, for appellant.<br><br>Shawn R. Biery, of Keefe, Campbell, Biery & Associates, of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justices Hoffman, Harris, and Moore concurred in the judgment and opinion. |

**OPINION**

I. INTRODUCTION

Claimant, Marie Salisbury, widow of Charles Salisbury, appeals an order of the circuit court of Henry County confirming a decision of the Illinois Workers' Compensation Commission (Commission) denying her motion for a lump-sum payout of benefits awarded in accordance with the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)). Claimant also contends that respondent, Frank's Flying Service, Inc., is not entitled to a credit against the award based on its overpayment of benefits prior to the arbitration hearing. For the reasons that follow, we affirm.

II. BACKGROUND

Claimant's decedent died in a work-related accident on June 12, 2009, when the crop duster he was piloting crashed. He was in respondent's employ at the time. Following the accident, respondent began paying claimant $1,231.41 per week. An arbitration hearing was held on May 8, 2012. Claimant was awarded "death benefits, commencing 6/13/09, of $461.78/week to the surviving spouse, Marie Salisbury, on his or her own behalf and on behalf of the children." Based on this ruling, respondent's initial payment of $1,231.41 per week resulted in an overpayment of $769.83 per week. Based on this overpayment, respondent was "given a credit of $00.00 for TTD, $00.00 for TPD, and $192,594.22 for other benefits."

Claimant filed a petition for a lump-sum payout. A hearing on that petition was heard before a commissioner on November 1, 2013. Claimant testified at the hearing. She testified that respondent began paying benefits shortly after her husband's death on June 12, 2009. She stated that she understood that she had the option of taking a $500,000 lump-sum payment or payments for 25 years, and she wished to take the "present commuted value of the 25-year payments." So far, respondent had paid her about $187,000, which she had mostly saved. She testified that she used some of it for living expenses. Claimant explained that she wanted a lump-sum payout because she did "not want to chance the loss of benefits in the future." She would be "more comfortable" having "control of the those benefits" rather than having them be contingent on "changes in the law or *** the benefits schedule." Moreover, if she passed away during the 25-year period, her benefits would cease and her "children would be deprived of the benefits from this award." On cross-examination, she agreed that $197,930.33 was "probably close" to the amount she had so far received. She stated that she was not claiming any financial hardship as the basis of seeking a lump-sum payout. She has no minor children. On redirect-examination, she testified that she was employed at an ethanol plant and her income was sufficient to meet her needs.

The Commission denied claimant's petition. It first acknowledged the controlling law. Lump-sum settlements are the exception rather than the rule. See *Skaggs v. Industrial Comm'n*, 371 Ill. 535, 539 (1939). Such a settlement is appropriate only if it is in the best interests of both parties, not simply the claimant. *Bagwell v. Industrial Comm'n*, 94 Ill. 2d 101, 105 (1983); see also *Illinois Zinc Co. v. Industrial Comm'n*, 366 Ill. 480, 482 (1937). The Commission then noted that since the award to claimant was not a definite sum and could, in certain circumstances, be terminated, it was clearly not in respondent's best interests to commute the ongoing payments to a lump sum. It then found that claimant "had

not indicated a basis for finding that a lump sum settlement would be in her own best interests." She has been able to save some of the proceeds of the payments, and her income is sufficient to meet her needs. Any reliance on a possible change of benefits in the future, the Commission stated, was "speculative." Moreover, claimant would lose any future increases in benefits. The circuit court of Henry County confirmed the Commission's decision, and this appeal followed.

¶ 7                                       III. ANALYSIS

¶ 8        On appeal, claimant raises two issues. First, she contends that the Commission lacked the authority to allow respondent a credit against the ultimate award due to its initial overpayment of benefits to claimant. Second, she contends that the Commission erred in denying her request for a lump-sum payout. We disagree with both contentions.

¶ 9                                       A. The Credit

¶ 10       Claimant first argues that the credit given respondent for its overpayment of benefits prior to the arbitration hearing is void because the Commission has no authority to give a credit against the subsequent award of death benefits. Resolution of this issue requires us to consider whether the Commission has authority to recognize such a credit under the provisions of the Act, so a question of law subject to *de novo* review is presented (see *Emerald Performance Materials, LLC v. Illinois Pollution Control Board*, 2016 IL App (3d) 150526, ¶ 25; see also *Outboard Marine Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 1026, 1029 (2000)). Claimant points out that the Commission, a creature of statute, has only the powers granted it by the legislature. *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 165 (2002). Any action taken outside its statutory authority is void. *Id.* According to claimant, the granting of a credit for excessive sums voluntarily paid by an employer is not specifically contemplated by statute, so the Commission has no authority to grant such a credit. Claimant concludes that the portion of the order granting that credit is void. We disagree as to the manner in which claimant frames this issue.

¶ 11       Quite simply, what is happening here is that the Commission is merely recognizing that an employer has already made a partial payment that goes to satisfying its obligation. There is no award in the sense that the Commission is not ordering the transfer of any obligations, benefits, or funds from claimant to respondent. Claimant is not being deprived of something she otherwise would have received but for the action of the Commission. Instead, respondent has voluntarily elected to satisfy part of its obligation prior to a formal order being entered—something which accrued to claimant's benefit. In other words, the Commission did not award respondent anything, it simply factored respondent's payments into its final order.

¶ 12       In *World Color Press v. Industrial Comm'n*, 125 Ill. App. 3d 469, 471-72 (1984), this court held that in the absence of a statutory bar, an employer could receive a credit for the overpayment of benefits. Discussing *World Color Press* in *Messamore v. Industrial Comm'n*, 302 Ill. App. 3d 351, 358-59 (1999), we stated:

         "*World Color Press* does not explicitly state the overpayment of TTD benefits is being set off against a permanent award, but instead speaks only in vague terms of credit against 'future compensation payments' and the 'total award.' However, we apply the reasoning of *World Color Press* regardless of whether the credit is sought

against a permanent disability award or some other benefit paid after the TTD overpayment."

Similarly, here, the reasoning of *World Color Press* is relevant though we are confronted with the overpayment of a death benefit rather than TTD. Absent a statutory prohibition, there is no reason why the Commission cannot take into account respondent's payments that occurred prior to the arbitration hearing.

¶ 13 Indeed, we note that section 7(e) of the Act (section 7 covers the amount of compensation in cases involving a fatality) states, in pertinent part, "The payments of compensation by the employer in accordance with the order or award of the Commission discharges such employer from all further obligation as to such compensation." 820 ILCS 305/7(e) (West 2008). It is axiomatic that we may not read into a statute any exceptions or limitations not contained in its plain language. *Isaacs v. Industrial Comm'n*, 138 Ill. App. 3d 392, 396 (1985). Nothing in the plain language of this provision indicates that an employer should only be given credit for payments made subsequent to a formal award. Clearly, the payments respondent made leading up to the arbitration hearing were made in contemplation of an award.

¶ 14 Moreover, deep policy concerns are at issue here. Encouraging employers to make prompt and voluntary payments of benefits furthers the purpose of the Act. *Messamore*, 302 Ill. App. 3d at 359. It is obvious that "[d]enying credits for errors such as the one in this case would encourage administrative delays as employers attempt to resolve every ambiguity before paying benefits." *Id.* The primary purpose of the Act is to "provide employees with *prompt* and definite compensation." (Emphasis added.) *Mattern v. Industrial Comm'n*, 216 Ill. App. 3d 653, 654 (1991). Thus, claimant's position runs counter to the beneficent purposes of the Act.

¶ 15 In short, claimant has identified no statutory provision prohibiting the Commission from recognizing a credit in circumstances such as this. Allowing the Commission to do so is consistent with the policies underlying the Act. Accordingly, we hold that the Commission did not err by taking into account respondent's prior overpayment of benefits in fashioning an award.

¶ 16 B. The Lump-Sum Payout

¶ 17 Claimant also contests the Commission's decision to deny her request for a lump-sum payout. Section 9 of the Act (820 ILCS 305/9 (West 2008)) sets forth the circumstances under which a lump-sum payout is appropriate. We review the Commission's decision to grant or deny such a request using the manifest weight standard of review. *Bagwell*, 94 Ill. 2d at 106. Therefore, we will reverse only if an opposite conclusion to the Commission's is clearly apparent. *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 741-42 (1994).

¶ 18 Our supreme court has held that "[l]ump-sum awards are the exception and not the rule." *Bagwell*, 94 Ill. 2d at 106. A lump-sum payout will be awarded only if it is in the best interests of both parties. *Id.* at 105. As the proponent of the motion, the burden was on claimant to show that a lump-sum payout was warranted. *Skaggs*, 371 Ill. at 540.

¶ 19 The Commission found that claimant failed to carry that burden. Essentially, the Commission based its decision on a lack of evidence concerning either party's best interests. The evidence available showed that claimant was suffering no economic hardship and had

saved most of respondent's periodic payments. Claimant sets forth three reasons she believes indicated that a lump-sum payout would be appropriate in this case. First, she states that "[r]eplacement of [i]ncome lost to the family unit by absence of decedent's income" justifies a payout. However, she does not explain why periodic payments do not ameliorate this concern. As noted, the evidence in the record shows no economic hardship. Second, she sets forth as another reason, "Replacement of the expectancy of an inheritance from the deceased person from lifetime efforts that would accrue to the family." Given that claimant is able to save most of the periodic payments she receives, we do not see this as compelling support for a lump-sum payout. Moreover, this factor would be present in virtually every case such as this, so it does not serve to distinguish this case from others and explain why this case should be an exception to the rule that lump-sum payouts are not favored. See *Bagwell*, 94 Ill. 2d at 106. Third, claimant states that the "[a]vailability of immediate financial resources to the family from invested funds if ready funds were needed" warrants a lump-sum payout. However, the evidence shows no such need, and again, this consideration does not distinguish this case from other similar cases.

¶ 20        Furthermore, claimant does not even attempt to establish that terminating periodic payments in favor of a lump-sum payout would not be in respondent's best interests. Instead, she argues, "It is difficult to imagine any set of facts in any case involving periodic payments that could terminate by future unknown events to be in the best interest of both parties." Later, she reiterates that "it seems impossible to envision or conjure a fact situation in a *death case*, where the best interests of both surviving spouse and family surviving [*sic*] and the employer can be served at the same time." (Emphasis in original.) Perhaps so—however, that simply is consistent with the supreme court's admonition that lump-sum payouts are the exception rather than the rule. *Id.* Section 9 clearly states that both parties' interests are to be considered: "If, upon proper notice to the interested parties and a proper showing made before such Commission or any member thereof, it appears to the best interest of the parties that such compensation be so paid, the Commission may order the commutation of the compensation to an equivalent lump sum." 820 ILCS 305/9 (West 2008). Ironically, claimant charges that the Commission has assumed the role of a "super-legislature" by "making its own determination of the wisdom of lump sum settlements" when, in fact, it is claimant who asks us to ignore a portion of section 9 and disregard respondent's best interests.

¶ 21        In sum, claimant has shown no particular need or compelling reason on her or her family's behalf for a lump-sum payout. Similarly, nothing indicates a lump-sum payout is in respondent's best interests. Under such circumstances, we cannot say that an opposite conclusion to the Commission's is clearly apparent and that a lump-sum payout clearly would be in the parties' best interests. As such, the Commission's decision on this issue is not against the manifest weight of the evidence. Claimant raises a number of additional points regarding the proper valuation of the lump-sum payout; however, given claimant's failure to establish that the payout would be in the parties' best interests, we need not address those arguments.

¶ 22                                          IV. CONCLUSION
¶ 23        In light of the foregoing, the order of the circuit court of Henry County confirming the decision of the Commission is affirmed.

¶ 24       Affirmed.