2019 IL App (1st) 181646

THIRD DIVISION
June 19, 2019

No. 1-18-1646

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MATTHEW GORAL, KEVIN BADON, MICHAEL MENDEZ, MILAN STOJKOVIC, DAVID EVANS III, FRANK DONIS, and LASHON SHAFFER, on Behalf of Themselves and Others Similarly Situated, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 17 CH 15546 |
| THOMAS J. DART, Individually and in His Official Capacity as Cook County Sheriff; COOK COUNTY, ILLINOIS; THE COOK COUNTY SHERIFF'S MERIT BOARD; and TONI PRECKWINCKLE, Individually and in Her Official Capacity as President of the Cook County Board of Commissioners, | ) ) ) ) ) ) ) | Honorable Sophia H. Hall, Judge Presiding. |
| Defendants-Appellees | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs here are employees of the Cook County Sheriff, whom the Sheriff has charged with disciplinary infractions. From the outset of their administrative cases before the Cook County Sheriff's Merit Board (Board), almost all of which remain pending, plaintiffs have challenged the authority of the Board to hear their cases, based on claims that the Board is

illegally constituted. They also filed a separate lawsuit—the one before us—likewise challenging the Board's authority to adjudicate their cases.

¶ 2    The trial court dismissed the complaint for lack of subject-matter jurisdiction, reasoning that plaintiffs were required to first exhaust their administrative remedies before proceeding with this claim.

¶ 3    In addition to urging us to affirm on this basis, the Sheriff principally argues that the complaint's challenge to the Board's authority is barred by the "*de facto* officer" doctrine, which this court has employed to reject several similar challenges by Sheriff's employees to the Board's authority in the last two years.

¶ 4    We hold that plaintiffs may proceed with nearly all of their claims in this lawsuit, notwithstanding their failure to exhaust administrative remedies. And we find the "*de facto* officer" doctrine inapplicable to this matter. We affirm in part as modified, reverse in part, and remand with directions.

¶ 5                                    BACKGROUND

¶ 6    The sequence of events is critical to our analysis. Some of the facts are subject to judicial notice. See *Thurman v. Department of Public Aid*, 25 Ill. App. 3d 367, 370 (1974). Others come from allegations in the complaint, which we accept as true, as the complaint was dismissed at the pleading stage. See *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 290 (2010).

¶ 7    On February 3, 2016, the Sheriff filed charges against one of the plaintiffs in this case, Frank Donis, and referred him to the Board for termination proceedings. Seven months later, in September 2016, the Sheriff filed individual complaints against four other plaintiffs in this case—Matthew Goral, Kevin Badon, Michael Mendez, and Milan Stojkovic—seeking to terminate each employee.

¶ 8    Five days after Goral, Badon, Mendez, and Stojkovic were charged, on September 23, 2016, we issued our first decision in *Taylor v. Dart*, 2016 IL App (1st) 143684, *vacated in part*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order). Taylor, the Sheriff's employee who was terminated by the Board in a final administrative decision, argued in court that the Board's actions were void because the Board's composition violated state law. He argued that one of the Board members, Mr. Rosales, had been appointed on an interim basis, but state law did not provide for interim appointments. *Id.* ¶¶ 7-8.

¶ 9    We agreed. We held that the interim appointment of Rosales violated state law. *Id.* ¶ 36. And we held that the illegal composition fatally compromised the Board's authority to act, rendering its final decision against Taylor void. *Id.* ¶ 47.

¶ 10    The Sheriff appealed. On January 25, 2017, the supreme court denied review but, in a supervisory order, directed this court to vacate our judgment and decide an issue we had declined to consider regarding Cook County's home-rule authority. *Taylor v. Dart*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order).

¶ 11    On February 21, 2017, the Sheriff suspended plaintiff David Evans III. The next day, the Sheriff filed a complaint against Evans with the Board, seeking his termination.

¶ 12    Our second decision in *Taylor v. Dart*, 2017 IL App (1st) 143684-B, was issued on May 12, 2017. Our holding was the same: the interim appointment of Rosales violated state law, and the Board's final decision terminating Taylor was void, because the Board lacked statutory authority to issue the decision. *Id.* ¶¶ 37, 46.

¶ 13    On July 20, 2017, the Sheriff suspended without pay the last of our plaintiffs, Lashon Shaffer, and filed a complaint with the Board seeking Shaffer's termination.

¶ 14    During the preliminary stages of their administrative proceedings before the Board, plaintiffs raised arguments challenging the Board's statutory authority to hear their cases, based in part but not entirely on *Taylor*. The Board thus far has declined to consider those arguments.

¶ 15    More importantly, in November 2017, plaintiffs initiated this lawsuit by filing a verified complaint for declaratory, injunctive, and monetary relief against the Sheriff. At least in part, the complaint challenged the legal composition of the Board, and thus the Board's authority to enter final decisions against them.

¶ 16    The General Assembly, in response to our decision in *Taylor*, amended the state law governing Board appointments. See Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002). The amendment worked three changes: (1) it permitted the Sheriff to make interim appointments to the Board, (2) it abolished all existing terms of each member of the Board, and (3) it created a new schedule for staggering terms. *Id.*

¶ 17    On December 13, 2017, the Sheriff appointed a new Board (many of whom had been on the previous Board as well).

¶ 18    On January 23, 2018, the Sheriff filed, and the new Board received, "amended" complaints against each of the plaintiffs.

¶ 19    On February 26, 2018, plaintiffs filed a second amended verified complaint against the Sheriff, the one before this court now, to which we will refer simply as the "complaint." The complaint, among other things, challenged the legal composition of the Board—both the previous Board before which their charges were originally brought and the new Board, which was hearing the "amended" charges against them.

¶ 20    The complaint's allegations involving the previous Board were that (a) some members were illegal interim appointees, essentially a *Taylor* objection; (b) the Board had only five

4

members, not the required seven; (c) some of the members' terms were not staggered as required by state law; and (d) the Board's chairperson and secretary held their positions longer than permitted under state law.

¶ 21 The complaint's allegations against the new Board were (a) the Board's previous lack of authority could not be "cured" by filing "amended" charges with a new Board; (b) the Board's political composition violates state law; (c) the Board's chairperson and secretary continue to hold their positions longer than permitted under state law; (d) the Board created "fatal due process problems" by now requiring plaintiffs to pay the costs of their own hearing transcripts; and (e) the Board is biased, in "lockstep" with the Sheriff's wishes.

¶ 22 On the Sheriff's motion, the circuit court dismissed the complaint for lack of subject-matter jurisdiction. The court ruled that plaintiffs were required to exhaust their administrative remedies before raising these claims outside the context of administrative review.

¶ 23 Since that ruling and while this appeal was pending, the Board decided Evans's case. The Board found in favor of Evans and ordered him reinstated effective February 22, 2017. The Sheriff has appealed that decision, but that decision is not before us.

¶ 24                                      ANALYSIS

¶ 25 The trial court dismissed the complaint for lack of subject-matter jurisdiction pursuant to section 2-619(a)(1) of the Code of Civil Procedure. See 735 ILCS 5/2-619(a)(1) (West 2016). A section 2-619 motion admits the legal sufficiency of the complaint; we accept as true the complaint's allegations and interpret them in the light most favorable to plaintiffs. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13. Our review is *de novo*. *Krop*, 2018 IL 122556, ¶ 13.

¶ 26　　The basis for the trial court's ruling was that each plaintiff had pending an administrative hearing that had not been completed, and that plaintiffs were required to exhaust their administrative remedies before they could challenge the agency's statutory authority before a court. The Sheriff defends that ruling but adds other bases for affirmance as well, as we may affirm on any basis in the record. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 14. We will begin with trial court's articulated basis, lack of subject-matter jurisdiction based on plaintiffs' failure to exhaust administrative remedies, because the question of the court's jurisdiction should be resolved as a threshold question. See *People v. Shinaul*, 2017 IL 120162, ¶ 7.

¶ 27　　　　　　　　　　　　　　　　　　I

¶ 28　　The court's subject-matter jurisdiction refers to its power to hear and resolve cases. *In re Luis R.*, 239 Ill. 2d 295, 300 (2010). Generally, the constitution gives the court original subject-matter jurisdiction over all "justiciable matters." Ill. Const. 1970, art. VI, § 9. One exception, however, is the review of administrative actions, which is governed by statute. *Id.*; see *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).

¶ 29　　The Administrative Review Law governs judicial review of most final administrative decisions, including final decisions of the Board here. See 735 ILCS 5/3-101 *et seq.* (West 2016). More to the point, the Administrative Review Law is "the sole and exclusive method to obtain judicial review of a final administrative decision" by the Board. *Stykel v. City of Freeport*, 318 Ill. App. 3d 839, 843 (2001).

¶ 30　　Thus, generally speaking, a party aggrieved by agency action cannot involve the courts until the administrative process has run its course—that is, until the plaintiff has exhausted all administrative remedies. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). But the exhaustion requirement is subject to six exceptions. *Id.* at 309. Two are relevant

here. First, a party need not exhaust when "the agency's jurisdiction is attacked because it is not authorized by statute." *Id.* Second, exhaustion is excused when "the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency." *Id.*

¶ 31                                    A

¶ 32    We first consider whether the exhaustion exception for challenges to an agency's authority applies to this case. In the context of administrative agencies, the term "jurisdiction" refers to an agency's statutory authority to act. *Van Dyke v. White*, 2019 IL 121452, ¶ 43 n.4; *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989); *Mercury Sightseeing Boats, Inc. v. County of Cook*, 2019 IL App (1st) 180439, ¶ 55 ("When we speak of an administrative agency's 'jurisdiction,' we mean its authority to act."). Agencies have no inherent or common-law authority; their power is limited to that given them by the legislative body that created them. *Mercury*, 2019 IL App (1st) 180439, ¶ 55. So if an agency acts beyond its statutory authority—if it acts without "jurisdiction"—its actions are invalid and void.

¶ 33    At oral argument, the Sheriff's counsel suggested that agency jurisdiction is merely a question of whether the enabling statute granted the agency power to regulate in a particular field. But that only tells half the story. True enough, as counsel argues, agency jurisdiction often involves a question of whether and to what extent an agency is substantively empowered to act. See, *e.g.*, *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 34 (rejecting agency's claim that it possessed statutory authority to award punitive damages); *Abatron, Inc. v. Department of Labor*, 162 Ill. App. 3d 697, 701 (1987) (holding that Department of Labor was not authorized to initiate enforcement proceedings under authorizing statute); *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 115 (1976) ("We hold the Commission was

without power to award attorney fees and that its order doing so was void and subject to the collateral attack made upon it in the circuit court.").

¶ 34   But there's also a procedural aspect to agency authority. Sometimes, an agency's enabling statute creates procedural steps that an agency—or the parties wishing to appear before the agency—must follow. The failure to follow those steps deprives the agency of authority—*i.e.*, jurisdiction—to hear the case. *Mercury*, 2019 IL App (1st) 180439, ¶¶ 57-61; *Austin Gardens, LLC v. City of Chicago Department of Administrative Hearings*, 2018 IL App (1st) 163120, ¶ 23; *Modrytzkji v. City of Chicago*, 2015 IL App (1st) 141874, ¶ 14.

¶ 35   Indeed, in *Taylor*, 2017 IL App (1st) 143684-B, ¶¶ 37, 46, we found the Sheriff's interim appointment of Rosales procedurally impermissible under the Counties Code (55 ILCS 5/3-7002 (West 2012)), which rendered the entire validity of the Board's proceedings in Taylor's case void, rather than voidable—a telling distinction, because only decisions that were entered without jurisdiction are void.

¶ 36   Likewise, in *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186 (2003), our supreme court invalidated the decision of a board to fine and reprimand Vuagniaux because that board had appointed a temporary member to replace a disqualified one in hearing Vuagniaux's case. The enabling statute (the Medical Practice Act) allowed only the governor to appoint members to the board, and the board's authority, derived from that statute, was thus limited by that statute. *Id*. at 185-86. Because the board "had no authority" to appoint the temporary member, "it was not lawfully constituted at the time it recommended that Vuagniaux be reprimanded and fined." *Id*. at 186. As a result, our supreme court held that the Department's decision was "invalid and cannot be given effect." *Id.*

¶ 37    Similarly, in *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 166-67 (2002), the supreme court held that two members of the Industrial Commission were illegally appointed, and thus that commission's final decision was invalid and void.

¶ 38    As in *Vuagniaux*, *Daniels*, and *Taylor*, the complaint here alleges several defects in the Board's composition, which plaintiffs claim would nullify the Board's authority to adjudicate the administrative actions against plaintiffs. As noted earlier, plaintiffs allege that "the Board has either had illegally appointed members with unlawful terms of less than six years, had illegally-appointed members with non-staggered terms, been composed of only five members, failed to meet the Act's political affiliation requirements, and/or had a chairperson and secretary who occupied such positions in excess of the statutory limit."

¶ 39    At this stage, the merit of these allegations is beside the point. The important point here is that these allegations unquestionably challenge the Board's lawful composition, and thus its authority to act. They clearly fit within the authority exception to the exhaustion requirement. See *Castaneda*, 132 Ill. 2d at 308-09.

¶ 40    The reasons that parties need not exhaust administrative remedies before challenging the statutory authority of the agency should be obvious. For one thing, if the Board lacks the authority to hear the case, the merits of the underlying case are irrelevant, so there is no reason why a court should wait for a developed underlying record to decide that legal question. See *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 552 (1999) ("This court has explained that where an agency's statutory authority to exercise jurisdiction is at issue, no questions of fact are involved. The agency's particular expertise is not implicated in the necessary statutory interpretation."). And second, agencies generally do not decide questions of their own statutory authority. *Id.* at 554 ("The determination of the scope of the agency's power

and authority is a judicial function and is not a question to be finally determined by the agency itself."); see also *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008) ("[A]n agency's decision on a question of law is not binding on a reviewing court. For example, an agency's interpretation of the meaning of the language of a statute constitutes a pure question of law. Thus, the court's review is independent and not deferential.").

¶ 41    This case is a perfect example. The complaint alleges that each plaintiff has raised statutory-authority questions before the Board, but the Sheriff has taken the position that the Board can't decide such questions, and thus far the Board has not. The Board's (alleged) refusal to even address plaintiffs' statutory authority claim within the confines of the agency's hearing process is strong evidence that the claim is not subject to the usual exhaustion requirement. See *Mercury*, 2019 IL App (1st) 180439, ¶¶ 70-71. And anyway, even if an agency were inclined to decide such an issue, these questions would be subject to *de novo* review by a court.

¶ 42    That is not to say that a party *can't* exhaust its administrative remedies before raising such questions. To the contrary, parties often exhaust their administrative remedies and then raise the statutory-authority question to the court on administrative review. One such example is *Taylor*, 2017 IL App (1st) 143684-B, ¶ 10. Another is *Daniels*, 201 Ill. 2d at 162. Each of those plaintiffs played out the administrative proceeding to its conclusion, then raised the statutory-authorization question on administrative review. It is a perfectly appropriate course of action. But the law does not *require* that of a party challenging the legal composition of the governing agency or board. The law allows parties to go straight to court, in advance of the conclusion of administrative proceedings, should it choose to do so. See *Castaneda*, 132 Ill. 2d at 308-09.

¶ 43    Having found that the authority exception to the exhaustion requirement applies, we must determine which of plaintiffs' claims actually challenge the Board's authority.

¶ 44                                                     1

¶ 45     First and most obviously, as already noted, plaintiffs' allegations that the Board "had illegally appointed members," that the Board's members were not "legal members," and that the Board was "illegal and unlawfully constituted" all call into question the propriety of the Board's composition and thus authority to act. Those claims are not barred by the exhaustion doctrine.

¶ 46                                                     2

¶ 47     We also find that plaintiffs' claims for backpay are included within this exception to the exhaustion requirement, though at first blush that might not appear to be the case.

¶ 48     The gist of plaintiffs' backpay claim is this:  Because the Board was improperly constituted when the Sheriff originally filed charges with the Board (per *Taylor*), the filing of those charges was a nullity—the Board couldn't transact any business. And at that time, state law, according to plaintiffs, did not permit the Sheriff to suspend an employee for more than 30 days without filing written charges. They claim, in other words, that the Sheriff had only two choices as of day 31 of an employees' suspension: file written charges or reinstate the employee. Because he couldn't file written charges without a valid Board in place, his only option was reinstatement of these employees. Thus, plaintiffs claim, they are entitled to their salaries (backpay, at this point) for every day they were suspended after day 30.

¶ 49     Even stopping right there, the backpay claim argues a lack of statutory authority in two distinct ways. First, the written charges were invalid, because the Board was invalid and lacked authority to act, per *Taylor*. And second, the *Sheriff* lacked authority to suspend for more than 30 days without formally charging them, which he could not do absent a validly composed Board.

¶ 50     Plaintiffs further claim that nothing changed when the Sheriff reconstituted the new Board under the new state law and filed "amended" charges against them. First, because the new

Board also has fatal composition defects, so the charges remain a nullity. And second, they say, because you can't "amend" a charge that was a nullity in the first place.

¶ 51 We express no opinion whatsoever on the merits of this claim. It was difficult to untangle, and it has not been fully briefed. But the merits are beside the point. The salient point is that the claim for backpay is based, in more ways than one, on the Board's or the Sheriff's statutory authority (or lack thereof) to act, and thus this claim is also excepted from the exhaustion doctrine.

¶ 52 The Sheriff says the backpay claim requires exhaustion, because the Board, and not a circuit court, is the proper entity to enter an award of backpay. That would be true if the question was a factual one that "required the taking of additional evidence." *Cole v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 396 Ill. App. 3d 357, 372 (2009) (discussing *Mitchem v. Cook County Sheriff's Merit Board*, 196 Ill. App. 3d 528 (1990)). But the predominant questions here are legal questions—questions of the Board's and the Sheriff's statutory authority to act—which as we have already noted, are claims that need not be raised before the agency and would be subject to *de novo* review, in any event. *Highlands, L.L.C.*, 188 Ill. 2d at 554 (scope of agency's power is ultimately judicial determination). They are not barred by the exhaustion doctrine.

¶ 53 And the Sheriff's argument misunderstands the nature of the backpay claim. Plaintiffs do not want the Board to do anything, because they do not think the Board has the power to do anything. Plaintiffs instead claim that they were suspended by the Sheriff without lawful authority, and that they are therefore entitled to compensation to make them whole for the period of time that they were unlawfully suspended (which they say continues on even today),

*regardless* of whether they win or lose their administrative hearings. We find no barrier to the circuit court's review of this question.

¶ 54                                                3

¶ 55    For many of the same reasons, we find that counts 4 and 5 survive the exhaustion doctrine. These are claims against the Sheriff for negligent misrepresentation and common-law fraud. Again, at first blush, they appear to have little to do with the Board's lack of statutory authority. But in fact, that statutory-authority argument is the foundation of each count.

¶ 56    Both counts allege that, by filing charges with a Board that was in fact invalid (per *Taylor*) and in permitting those cases to go forward, the Sheriff and the Board made false representations to plaintiffs regarding the validity and legality of the Board's composition—and thus to its ability to legally conduct business. These counts cannot be prosecuted without first litigating the underlying question of the Board's statutory authority.

¶ 57    We emphatically restate that we are not saying that these counts state a claim, or that various arguments that the Sheriff or the Board might raise against these tort claims would or would not succeed. Our only question is one of jurisdiction, and these tort claims are inherently based on the Board's lack of statutory authority. Thus, they survive the exhaustion bar.

¶ 58                                                B

¶ 59    That leaves three claims, all sounding in due process. One is that the Board's new fee on hearing transcripts violates plaintiff's right to a fair hearing and due process. Another is that the Board is inherently biased against plaintiffs, as the person charging them with infractions—the Sheriff—is the one who appointed the members of the Board. And third, the Board is biased against plaintiffs for filing this lawsuit, as evidenced by several unflattering comments the Sheriff (in a brief adopted by the Board) has made about plaintiffs in this litigation.

¶ 60    Plaintiffs claim that it would be futile to exhaust administrative remedies as to these claims. Futility is another exception to the exhaustion doctrine. *Castaneda*, 132 Ill. 2d at 308-09. As these three due-process arguments are different, the application of the futility doctrine to each of them must be considered separately.

¶ 61                                              1

¶ 62    First, we consider plaintiffs' claim that the Board is irretrievably biased against them and in favor of the Sheriff, because each Board member owes his or her appointment to the Sheriff. One might view this as a facial due process challenge to the statute that permits the Sheriff to appoint members of the Board, because what is true for plaintiffs is true for every litigant who comes before the Board: they are facing a Board appointed by the Sheriff—the prosecutor, so to speak. See *People v. Thompson*, 2015 IL 118151, ¶ 36 (discussing facial, compared to as-applied, constitutional challenges). That distinction is important, because a facial challenge to government action is another exception to the exhaustion bar. See *Castaneda*, 132 Ill. 2d at 309.

¶ 63    But plaintiffs emphatically disavow any suggestion that they are raising a facial challenge. They claim to be raising an as-applied challenge, which means that they seek only a determination that *their* due process rights have been violated. *Thompson*, 2015 IL 118151, ¶ 36. And as we've said, they rely not on the facial-challenge exception to the exhaustion bar but on the futility exception.

¶ 64    "An aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine *** where the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency ***." *Castaneda*, 132 Ill. 2d at 308-09. Plaintiffs are claiming here that they can't get a fair hearing before a Board that was appointed by the very person who wants them fired, the Sheriff.

¶ 65    The parties have cited little case law on this topic, and in this specific context, little exists within this jurisdiction. There is no doubt, however, that an agency's bias could, in the proper setting, serve as a basis for claiming that going through the exercise of an administrative hearing before that agency is pointless, a preordained outcome—futile. See *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ("[A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.").

¶ 66    For example, if the agency or agency head has already publicly stated the outcome, the litigant has demonstrated the futility of going through a kangaroo hearing. See, *e.g.*, *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (*per curiam*) (in view of attorney general's submission that challenged prison rules were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with attorney general "would be to demand a futile act"); *Carter v. Signode Industries, Inc.*, 688 F. Supp. 1283, 1287 (N.D. Ill. 1988) (Employee Retirement Income Security Act claim seeking adjustment of benefits was not barred by failure to exhaust administrative remedies; exhaustion was futile, as plan director had already "made it clear that no adjustments were forthcoming").

¶ 67    We don't have that situation here. The complaint does not allege that the Board has preannounced its conclusions. Plaintiffs merely allege a conflict of interest, nothing more. Yes, that opens the door to the possibility of bias—as is true of any conflict of interest—but courts that have considered the question have never found the possibility of bias to be sufficient.

¶ 68    "Administrative review is not futile if the plaintiff's allegations of bias are purely speculative." *Joint Board of Control of the Flathead, Mission & Jocko Irrigation Districts v. United States*, 862 F.2d 195, 200 (9th Cir. 1988). Courts require "[o]bjective and undisputed evidence of administrative bias [that] would render pursuit of an administrative remedy futile."

15

(Internal quotation marks omitted.) *Artis v. Greenspan*, 223 F. Supp. 2d 149, 154-55 (D.D.C. 2002). "A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive" is not enough to bypass the exhaustion requirement. *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 78-79 (1st Cir. 1997). In the Seventh Circuit, the futility exception requires plaintiffs to show " 'that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.' " *Citadel Securities, LLC v. Chicago Board Options Exchange, Inc.*, 808 F.3d 694, 700 (7th Cir. 2015) (quoting *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 659 (7th Cir. 1992)).

¶ 69　　The fact that the Board members adjudicating plaintiffs' cases were appointed by one of the parties to the administrative proceeding, the Sheriff, certainly leaves open the possibility that the Board members may be biased in favor of the Sheriff. But that is not nearly enough to avoid the exhaustion bar. And we hasten to take judicial notice (without objection from the parties) that one of the plaintiffs in this case, Evans, has now had his case adjudicated by the Board, and he prevailed. True, there appears to be some unhappiness with the victory relating to backpay, but the point remains that this allegedly biased Board ruled, at least in large part, in favor of one of the plaintiffs and against the Sheriff. This only underscores that plaintiffs have alleged nothing more than the possibility of bias, which is not sufficient to overcome the exhaustion bar.

¶ 70　　Thus, plaintiffs' due process argument relating to the Board's bias, based on the Sheriff's appointment of the Board members to their positions, is barred and was properly dismissed.

¶ 71　　　　　　　　　　　　　　　　　　　　2

¶ 72　　We would say the same of plaintiffs' other due process argument sounding in bias, namely the Board members' hostility to plaintiffs stemming from this lawsuit, and the Board's joining of the Sheriff's appellate briefs, which contain unflattering remarks about plaintiffs.

¶ 73 The fact remains that it is mere speculation that the Board members will not do their jobs and give plaintiffs fair hearings. And speculation is not enough. "[A] party's suspicion of 'bias on the part of a *** commission,' based on members' allegedly hostile comments, 'does not render pursuit of administrative remedies futile.' " *Holt v. Town of Stonington*, 765 F.3d 127, 132 (2d Cir. 2014) (*per curiam*) (quoting *Simko v. Ervin*, 661 A.2d 1018, 1023 (Conn. 1995)). As plaintiff Evans's victory shows, it is nowhere near a preordained conclusion that plaintiffs will lose their cases.

¶ 74 This due process claim, likewise sounding in bias, was also properly dismissed based on failure to exhaust administrative remedies.

¶ 75                                               3

¶ 76 That leaves one final due process claim, which is different than the "bias" claims. Plaintiffs allege that during the pendency of their cases before the Board, the Board amended its rules to require that the party requesting a hearing transcript pay for the transcript. The complaint in this regard is short on details; plaintiffs simply allege that imposing the transcript fee on them would "violate[ ] their right to due process and fundamental fairness, and unconstitutionally burden[ ] their right to a hearing."

¶ 77 We again note that this could be a facial due process challenge to the transcript-fee rule, as it appears to apply equally to all litigants before the Board, but again plaintiffs insist they are raising no such claim. This is an as-applied challenge, they say, so the facial-constitutional-challenge exception to exhaustion is not in play. Instead, they again raise what we call the futility exception, albeit a slight variation on it, where the exhaustion requirement is waived because the administrative action "cannot provide an adequate remedy." See *Castaneda*, 132 Ill. 2d at 308-09.

¶ 78     We see this claim differently than the other due process claims. Plaintiffs allege that they have suffered financially by being suspended without pay for a quite lengthy time, and that imposing this additional financial cost (mid-stream during the administrative action, no less) injures their right to a fair hearing. No doubt, parties in litigation often want access to transcripts of their hearings for various reasons, including preparing for the next day's hearing, drafting cross-examinations of witnesses by reviewing their previous direct testimony, and if nothing else having the transcripts to prepare proposed findings of fact at the close of the case.

¶ 79     We are sympathetic to plaintiffs who have gone months if not years without a paycheck, who must hire lawyers to fight for the jobs, and who now are tasked with yet another financial burden. And we agree that if the imposition of the transcript fee prevents them from obtaining the transcripts, then in a very real sense they are being denied the right to a fair hearing. It would be illogical to require plaintiffs to exhaust their administrative remedies in that event, because their whole point is that they *can't* exhaust them, at least not in a fair and meaningful way, not without one hand tied behind their back. In a real sense, plaintiffs could establish that the administrative action "cannot provide an adequate remedy." See *id.*

¶ 80     But plaintiffs haven't pleaded that they can't afford the transcript fees and thus will be denied the transcripts. They have pleaded that this fee is unfair and burdensome, but unless they can plead that they are unable to afford the fees, and thus unable to acquire hearing transcripts, we do not see how they can fit into this exception to the exhaustion requirement.

¶ 81     Plaintiffs should be given an opportunity to amend their pleading in this regard, if they can do so in good faith, of course. If they do not so amend, this due process claim should be dismissed for failure to exhaust administrative remedies. If they so plead, then the exhaustion

requirement does not bar this claim, and the court has jurisdiction to consider it. As always throughout this discussion, we express no opinion on the merits of the claim.

¶ 82                                                    C

¶ 83    To summarize: The court has subject-matter jurisdiction over counts 1 (declaratory judgment), 2 (injunctive relief), and 3 (mandamus), except insofar as plaintiffs raise due process challenges based on the Board's bias. To the extent those counts include these bias claims, the exhaustion doctrine bars them, and those claims should be dismissed. Otherwise, those counts survive the exhaustion requirement.

¶ 84    As for the due process claim related to the Board's imposition of a fee on hearing transcripts, the exhaustion doctrine would not bar it, provided that plaintiffs can allege in good faith that this fee will prevent them from obtaining hearing transcripts. Plaintiffs should be given the option to replead if they so wish. If they properly do so, that due process claim is not barred by the failure to exhaust. If they decline that option or fail to properly plead it, that claim should be dismissed for failure to exhaust administrative remedies.

¶ 85    The court has subject-matter jurisdiction over counts 4 and 5, the rather creative tort claims plaintiffs assert. The exhaustion requirement does not bar them.

¶ 86    Count 6 is a prayer for class certification. At this juncture, there is no basis to dismiss that count, given that much of the complaint from which it derives has survived.

¶ 87                                                    II

¶ 88    The Sheriff next argues that, even if the court had jurisdiction to hear these challenges, we should affirm the dismissal of the complaint because it is barred by the "*de facto* officer" doctrine.

¶ 89 "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). "Under the *de facto* officer doctrine, a person actually performing the duties of an office under color of title is considered to be an officer *de facto*, and his acts as such an officer are valid so far as the public or third parties who have an interest in them are concerned." *Vuagniaux*, 208 Ill. 2d at 186-87. The doctrine " 'springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.' " *Ryder*, 515 U.S. at 180-81 (quoting 63A Am. Jur. 2d, *Public Officers and Employees* § 578 (1984)).

¶ 90 Simply put, the "*de facto* officer" doctrine protects the integrity of final agency decisions handed down *before* a court has declared a board's composition illegal. Though in hindsight we know that those decisions were rendered by an agency with an invalid composition, the law validates those old decisions, because it would be chaotic to uproot what could be hundreds or thousands of prior decisions, as parties spring out of the woodwork to piggyback onto the court ruling. To avoid that floodgate and to protect the finality of previous judgments, the law holds its nose and deems those old decisions valid, even though in a technical sense they were not.

¶ 91 There is a catch, however, in Illinois. In this state, the first party to identify a legal defect is entitled to relief, but once that first party secures the court ruling invalidating the Board's composition (and gets relief for having done so), any previous final decisions from that illegally constituted board are insulated from challenge, at least on that same legal theory. The reason for this dichotomy is to incentivize parties to identify legal defects in appointed bodies—thus giving

the first one to identify the problem relief—but then promoting the finality of judgments and the orderly administration of government by denying relief to Johnnies-come-lately.

¶ 92    That has been our take, at least, on some splintered decisions from our supreme court. In *Daniels*, 201 Ill. 2d at 166-67, two justices held that Daniels was correct in arguing that the Industrial Commission was illegally composed—two of the members were improperly appointed—and thus the Commission's final decision against Daniels was void. *Id.* Two other justices, in a concurring opinion by Justice McMorrow, believed that Daniels was, indeed, correct and entitled to relief, but that no other parties should be allowed to challenge Commission decisions on the same ground under the "*de facto* officer" rule. *Id.* at 173-78 (McMorrow, J., specially concurring, joined by Freeman, J.). One justice believed that the "*de facto* officer" doctrine barred *all* challenges to the Commission's authority—even that of Daniels. *Id.* at 178-81 (Fitzgerald, J., dissenting).

¶ 93    And that same year, in *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187 (2002), a case involving that same commission but not originally involving this doctrine, the losing party sought a rehearing based on the same legal defect in the commission's composition as in *Daniels*. While the majority denied the petition for rehearing without comment, three justices would have granted it and sharply criticized the notion that the denial might be based on Justice McMorrow's belief that the first party to identify the commission's legal defect would be entitled to relief, but any later litigant would not. *Id.* at 204-05 (Thomas, J., dissenting upon denial of rehearing, joined by Fitzgerald and Garman, JJ.).

¶ 94    We have taken Justice McMorrow's special concurrence in *Daniels* as the current statement of the law. See *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 58; *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶ 37. That is, under the "*de facto* officer" doctrine, the first party to correctly

identify a legal defect in an agency's composition is entitled to relief—a voiding of the agency decision—while others who later raise that same challenge are not.

¶ 95　And thus it has proceeded in cases involving the very Board before us. The first person to successfully challenge the Board's composition, Percy Taylor, got the relief he requested as a result of winning his argument—the Board's final decision was declared void. See *Taylor*, 2017 IL App (1st) 143684-B, ¶¶ 37, 46. But other Sheriff's employees, trying to invalidate previous final judgments based on the same or nearly same argument as in *Taylor*, were barred from doing so under the "*de facto* officer" doctrine. See *Lopez*, 2018 IL App (1st) 170733, ¶ 59 ("[s]ince [Lopez] is not the first claimant to have brought the illegal appointment of Rosales to light," *de facto* officer doctrine denied Lopez relief); *Cruz*, 2019 IL App (1st) 170915, ¶ 37 (quoting *Lopez* for same point with regard to Cruz); *Acevedo v. Cook County Sheriff's Merit Board*, 2019 IL App (1st) 181128, ¶ 25 (applying "*de facto* officer" doctrine to Acevedo's claim because "he is not the first one" to challenge appointment irregularity).

¶ 96　The Sheriff, then, argues here for a simple application of the "*de facto* officer" doctrine, requiring a dismissal of this complaint. For two reasons, however, we find the "*de facto* officer" doctrine inapplicable in this case.

¶ 97　First, there is a significant procedural difference between this case and the decisions cited above. In each of those decisions, the Sheriff's employee did not challenge the Board's authority until *after* the Board's final decision was issued. See *Acevedo*, 2019 IL App (1st) 181128, ¶¶ 3-4; *Cruz*, 2019 IL App (1st) 170915, ¶ 34; *Lopez*, 2018 IL App (1st) 170733, ¶¶ 37-39, 63.

¶ 98　So those employees' challenges raised the very specter that the "*de facto* officer" doctrine seeks to avoid—parties trying to revive *concluded* administrative actions based on a new court ruling that declares invalid the board's composition. See *Lopez*, 2018 IL App (1st) 170733, ¶ 58;

*Daniels*, 201 Ill. 2d at 176 (McMorrow, J., specially concurring, joined by Freeman, J.). Those employees' cases weren't particularly old, but they had been concluded at the administrative level before the statutory-authorization issue was raised in court. From the standpoint of the "*de facto* officer doctrine," it would make no difference whether their administrative cases had been concluded six months ago or six years ago.

¶ 99    Here, in contrast, at the time the complaint was filed, none of plaintiffs' administrative actions had gone to a final decision. Plaintiffs have been raising statutory-authorization arguments before the Board since their cases began, they continue to raise them, and they raised them in this separate lawsuit. They have all but shouted them from the mountaintop—*before* a final administrative was rendered.

¶ 100   That makes all the difference in the world. The "*de facto* officer" doctrine is concerned with the fear of unearthing old decisions, possibly hundreds or thousands of them (depending on how many decisions the illegally constituted board decided in the past). But that doctrine is not—and could not—be concerned with pending or brand-new cases. Once a court decides that a board is illegally constituted, that board can't keep hearing pending cases, much less entertain newly filed ones. To say otherwise would be to say that court decisions mean nothing.

¶ 101   The "*de facto* officer" doctrine looks backward. It does not look forward. Once a court declares a board's composition invalid, we may protect its old decisions, but we absolutely do *not* allow it to keep doing business—illegally—as if we had never issued our ruling.

¶ 102   It so happens that here, the General Assembly responded rather promptly to the *Taylor* decision and changed the statute governing Board appointments. And the Sheriff acted promptly in appointing a new Board. But what if those things hadn't happened? What if the Board had remained in its invalid state for years? Under the Sheriff's argument before this court, the

"*de facto* officer" doctrine would allow that Board to continue processing and deciding pending and new cases forever—as if *Taylor* was just an interesting discussion and not a binding decision of a court.

¶ 103   To their credit, the Board and the Sheriff seemed to recognize this very point. The complaint alleges that the Board, and the Sheriff, essentially held plaintiffs' pending cases in abeyance after *Taylor* was decided. And after the General Assembly amended the statute governing Board appointments, and a new Board was appointed, the Sheriff filed "amended" charges against plaintiffs, though they were essentially the same charges. The Board and the Sheriff, in other words, properly waited for a new Board before advancing the pending cases against plaintiffs.

¶ 104   But before this court, the Sheriff is arguing that the "*de facto* officer" doctrine protects these *pending* cases from a statutory-authority argument like that in *Taylor*. That position, if accepted, would inflate the "*de facto* officer" rule from a practical doctrine that avoids chaos and promotes finality of old administrative decisions into a doctrine that provides a board with *carte blanche* immunity to *continue* violating the law, going forward, and perhaps forever, brushing aside the *Taylor* decision like a piece of lint on a suit coat.

¶ 105   To put it plainly: Once *Taylor* was decided, any Sheriff's employee whose case was then-pending before the Board, or who was charged in a new case post-*Taylor*, had every right to challenge the Board's composition for the same reasons as in *Taylor* (or for different reasons). Old cases already finally decided, no, but pending or new administrative cases, yes. Plaintiffs' cases were pending at the time of the *Taylor*, and the "*de facto* officer" doctrine did not prevent them from challenging the Board's composition.

¶ 106   And even if what we have said above were not true, there is a separate and independent reason that we would not apply the "*de facto* officer doctrine" here: The statute governing the Board's appointments has now changed, and the Sheriff has appointed a new Board. A new statute, a new Board—but plaintiffs can't challenge the composition of this Board because Percy Taylor challenged the composition of a different Board under a different statute a few years ago? Nonsense.

¶ 107   It was one thing to prevent countless previous decisions from being challenged under the same theory as *Taylor*—the same Board, governed by the same statute, with the same legal defect. That is the very point of the "*de facto* officer" doctrine. Like it or not, it rewards the first party to correctly identify the legal defect in a board's composition, and parties aggrieved by previous final decisions who then try to piggyback on that same legal argument are out of luck. See, *e.g.*, *Lopez*, 2018 IL App (1st) 170733, ¶ 59; *Daniels*, 201 Ill. 2d at 176 (McMorrow, J., specially concurring, joined by Freeman, J.).

¶ 108   But once a new statute governing Board appointments has been enacted, and a new Board has been appointed pursuant to that new statute, the *status quo* is re-set. *Taylor* might have precedential value, but it no longer directly governs the outcome. A party who challenges the *new* Board's composition under a *new* statute is that "first" party to whom *Lopez* and Justice McMorrow were referring, bringing to the court's attention potential illegalities in the new Board's composition. Those claims might look a lot like those in *Taylor*, with regard to the old Board under the old statute, but they are by definition new arguments.

¶ 109   Consider if it were otherwise. Here, the new statute governing Board appointments is not all that different from its predecessor, but it certainly could have been. The General Assembly could have made sweeping, wholesale changes to Board appointments. It could have provided,

for example, that members of the Board would now be appointed by the Governor, with the advice and consent of the Illinois Senate. Imagine that it did, and that plaintiffs' legal argument here was that one of the members was not validly appointed because the Senate never confirmed him or her. Would we even dream of barring that argument under the "*de facto* officer" doctrine because a few years ago, Percy Taylor obtained a ruling from this court based on a completely different legal theory under a different statute governing a different board? Of course not.

¶ 110 The difference between that hypothetical and the matter before us is simply one of degree. A new statute brings with it new requirements (even if only slightly new), and ultimately a new Board (even if some of the members overlapped). The legal theories attacking this new Board's composition may resemble those in *Taylor*, but they are not the same.

¶ 111 If we were to accept the Sheriff's application of the "*de facto* officer" doctrine in this context, it would have no principled end. No matter how many times the statute governing Board appointments changed, no matter how *much* it changed, no matter how many new Board members came and left, no matter how much time passed, nobody could ever again raise a challenge to the Board's composition, because Percy Taylor once won a case challenging the Board's composition in 2017. That is an untenable result, to say the least.

¶ 112 For these reasons, the "*de facto*" officer doctrine does not bar a consideration of the claims in the complaint.

¶ 113                                        CONCLUSION

¶ 114 For the foregoing reasons, we affirm the circuit court's judgment to the extent it dismissed with prejudice plaintiffs' claims of a due process violation based on the Board's bias. With respect to plaintiffs' due process claim based on the transcript fee, pursuant to our power under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we affirm the court's order but

modify the dismissal to be without prejudice. If plaintiffs can plead that they cannot afford to pay the transcript fee, then the futility exception to the exhaustion requirement would then apply to this claim; if they cannot so plead, then this claim should be dismissed for failure to exhaust. With respect to all other claims, we reverse the court's judgment, finding that neither the exhaustion doctrine nor the "*de facto* officer" rule bar the complaint.

¶ 115   Affirmed in part as modified, reversed in part, and remanded with directions.